DisAbility Rights Idaho
J. Carl Mickelsen
carl@disabilityrightsidaho.org
Idaho State Bar #4553
200 South Almon St., Suite 101
Moscow, ID 83843
Phone: (208) 882-0962 (Voice/TDD)
Fax: (208) 883-4241
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RANDOLPH SMITH<br><br>  Plaintiff,<br><br>v.<br><br>BRENT REINKE and JOHANNA SMITH, in their official capacities,<br><br>  Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I. PRELIMINARY STATEMENT

1. This action arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA") and the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701 *et seq.* (hereinafter "Rehabilitation Act"). At issue is the failure of Defendants, Idaho Department of Correction (IDOC) officials, to ensure that Plaintiff, Randolph Smith, an inmate who is deaf, was provided an opportunity to effectively communicate with persons outside the prison that was equal to that provided hearing inmates. Hearing inmates are provided

the use of standard telephones to communicate with persons outside the prison. Using a standard telephone, hearing inmates can communicate with persons outside the prison using their primary language. Moreover, in light of the continuing spread of this basic technology, using the standard telephone hearing inmates have an ever increasing potential audience with whom they can communicate. Because of his disability, Plaintiff cannot communicate using a standard telephone. In recognition of this, the IDOC has provided him the use of a text telephone (TTY). However, a TTY does not enable Plaintiff to communicate with deaf persons outside the prison in a manner that is functionally equivalent to that afforded hearing inmates. A TTY does not allow him to communicate in his primary language. Moreover, because of changing technologies and trends, the actual number of persons he can contact using a TTY is continually decreasing. In fact, the TTY is becoming increasingly obsolete and useless. In light of this, Plaintiff requested that he be provided the use of a videophone. A videophone would allow him to communicate with an increased number of people using his primary language. The request for a videophone was denied. This denial violates Plaintiff's rights under the ADA and the Rehabilitation Act because it denies him, on the basis of his disability, an opportunity to communicate with persons outside the prison that is equal to that provided to hearing inmates.

## II. JURISDICTION AND VENUE

2.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

3.  This action is authorized by 42 U.S.C. § 12133 and 29 U.S.C. § 794a.

4.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because Defendants reside within the District of Idaho and the events and omissions giving rise to Plaintiff's claims occurred within this District.

### III.  PARTIES

5. Plaintiff, Randolph Smith, is a deaf adult who is currently incarcerated at the Idaho State Correctional Institution (ISCI) in Kuna, Idaho.  At all times relevant to this Complaint, he has been in the custody of the IDOC.

6. Defendant, Brent Reinke, is the Director of the IDOC, a state agency existing pursuant to the laws of the State of Idaho. He is the chief administrative officer for the Board of Correction which is charged with the control, direction and management of the State's correctional facilities as well as the care and maintenance of the prisoners in its custody. Mr. Reinke has been the Director of the IDOC since 2007 and he is being sued in his official capacity.

7. Defendant, Johanna Smith, is the warden of the ISCI.  As the facility head, she is primarily responsible overseeing, managing and operating the ISCI on a day-to-day basis.  Ms. Smith has been the warden of the ISCI at all relevant times hereto.  Ms. Smith is being sued in her official capacity.

### IV. FACTUAL ALLEGATIONS

8. Plaintiff is and has been deaf for all times relevant hereto.

9. Plaintiff's primary language is American Sign Language (ASL) and he uses written English as a secondary language.

10. ASL is a complex language that employs signs made with hands, facial expressions and body language.  It is distinct and different from English with its own vocabulary and rules for grammar and syntax.

11. A "TTY," a teletypewriter or text telephone, also known as a telecommunication device for the deaf ("TDD"), is a telephone equipped with a keyboard and a display screen which allows individuals to send and receive typed messages via the telephone line either directly to another

person with a TTY or indirectly to a person without a TTY through the use of a Telecommunications Relay Service (TRS).

12. The TTY is a cumbersome, 60-year-old technology which can present a severe challenge in effectively communicating for deaf persons for whom English is not their primary language.

13. Videophones enable videoconferencing and this allows communication directly in ASL without having to translate every statement into written English. Videophone users can make direct calls to one another or can call a person who is not deaf using a Video Relay Service (VRS). The VRS connects to an interpreter to translate ASL into English and vice versa.

14. Communicating directly in ASL via a videophone allows for there to be a genuine conversation on a par with that experienced by hearing inmates communicating via standard telephones.

15. Communicating through a VRS allows conversations to flow in near real time and in a faster and more natural manner than through a text-based TRS.

16. Under the current technology one cannot place a call from a TTY to a videophone through a relay service.

17. Videophones are rapidly replacing TTYs as the principal means for telecommunication in households of individuals who are deaf.

18. The Idaho Telecommunications Relay Service handles intrastate TTY calls. Its traffic declined approximately 73% from 2006 through 2010. Idaho Public Utilities Commission, Order No. 32230 (2011).

19. According to the information posted by Rolka Loube Saltzer Associates in the VRS Minutes Report, during this same period of time, there was approximately a 275% increase in the use of VRS nationally. http://www.r-l-s-a.com/TRS/reports/VRSGrowth112010.pdf (last visited

December 8, 2011). Rolka Loube Saltzer Associates is the Interstate Telecommunications Relay Service Fund Administrator appointed by the Federal Communications Commission.

20. As a consequence of this trend, many households of individuals who are deaf no longer have a TTY and, since they rely exclusively on videophones for telecommunication, they have no way to accept a TTY call.

21. The IDOC provides hearing inmates telephones to communicate with family, friends and other persons outside the prison.

22. Telephones afford the opportunity for hearing inmates to communicate directly in their primary language to persons outside the prison.

23. Telephone use has expanded to a point where currently, approximately 98% of people in the U.S. live in households with telephones. As a consequence, hearing inmates are afforded the opportunity via the telephone to communicate with virtually any family member, friend or other person outside the prison.

24. On an undated "IDOC Offender Concern Form" addressed to Defendant Smith and Terrie Rosenthal, an IDOC employee who was the Administrative Support Manager, Plaintiff identified the following as his concern:

> I am writing this concern as a formal request to update the mode of "telephone access" for deaf people like me who depend solely on sign language as our primary language. The TTY is becoming obsolete and I am unable to call many of my friends due to their conversion to video phones that allows sign language to be transmitted. Due to this new technology I am unable to contact my brother and the only TTY contact I have is also experiencing problems with aging TTYs. I put in this request for updating the "deaf phone system."

In a response dated November 3, 2009, Plaintiff's request was denied and he was told: "You have a relay service option or writing letters."

25.     On an "Idaho Department of Correction Grievance Form" received November 19, 2009, Plaintiff stated he had sent a concern form "regarding the use of the TTY becoming outdated. I requested it due to the changing technology and the use of videophones. The TTY is becoming obsolete and I can only call one person out of many."  Terrie Rosenthal responded: "I do not understand why you are only able to call one person out of many. There is a relay service available that utilized basic phone service without a TTY on the recipients end." Upon review, another IDOC employee stated: "You can make phone calls with the current system." Plaintiff appealed, stating: "The problem is you do not understand that the people I want to call are deaf; have already upgraded to videophone service, and no longer have TTYs. The relay does not put forward calls from one deaf person to another."  Defendant Smith, replied: "We are going to do some research on this issue. I will let you know the outcome when we have more information." To date, Plaintiff has not been informed of an outcome stemming from the research.

26.     On an "IDOC Offender Concern Form" dated January 22, 2010, Plaintiff claimed "that the provision of a videophone is a reasonable modification of IDOC's practices that is necessary to protect my rights under the A.D.A." The response to this, dated January 25, 2010, stated: "You have exhausted all of your administrative remedies on this issue."

27.     On behalf of Plaintiff, DisAbility Rights Idaho (DRI) contacted the IDOC in April of 2010 by letter and requested that, based on the requirements of the ADA, they provide a videophone for Plaintiff's use. In that letter, DRI stated: "As you may be aware, TTYs, which are what IDOC currently offers Mr. Smith in lieu of a telephone, are rapidly becoming obsolete and falling into disuse.  As a result of this, Mr. Smith's ability to communicate with other deaf

persons is becoming increasingly limited.  Aside from this, a TTY does not allow a deaf person to communicate in their primary language – sign language – in a manner comparable to that afforded hearing inmates via a telephone."

28.     In response to DRI's request, Deputy Attorney General William Loomis stated: "The ADA does not require state of the art technology as a method of reasonable accommodation.  Your letter also implies that Mr. Smith cannot reasonably communicate with other deaf persons.  As you can imagine, we disagree.  Mr. Smith can write letters just like many other offenders do.  He can also have visitors.  The fact of the matter is that he can communicate."

29.     In a letter dated May 6, 2010, DRI responded to Mr. Loomis, stating: "The regulations implementing Title II prohibit a public entity from providing 'a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.'  28 C.F.R. § 35.130(b)(1)(iii). Via telephone, non-deaf inmates are afforded a means to communicate with others in their primary language.  Mr. Smith is not provided a comparable opportunity with a TTY since this does not transmit sign language.  Via telephone, non-deaf inmates can communicate with others using the prevailing technology and this affords them the maximum number of possible interlocutors.  Insofar as video phones have become the prevailing technology among the deaf community, Mr. Smith is simply not provided a comparable opportunity.  To the contrary, the sphere of possible interlocutors is constantly being diminished and this exacerbates the tremendous isolation he already experiences due to his deafness."

30.     From approximately April, 2010 until July, 2011, the TTY Plaintiff was allowed to use would not function on the telephone system the inmates were allowed to use due to an "upgrade"

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF                              Page 7

of that system. During most of this period Plaintiff used the TTY from a telephone in one of the prison offices. However, there were times when he was not given any access to a telephone that would function with the TTY.

31. The federal Bureau of Prisons has recognized that "[t]elephone privileges are a supplemental means of maintaining community and family ties that will contribute to an inmate's personal development." 28 C.F.R. § 540.100. Telephones and other forms of telecommunication help prepare inmates to make a positive transition back to civilian life once their sentence has been completed.

32. In trying to secure a video phone for his use, Plaintiff has exhausted the available administrative remedies utilizing IDOC's grievance procedure.

## V. CLAIMS FOR RELIEF

### Claim 1: Americans with Disabilities Act

33. Plaintiff realleges and incorporates by reference all the foregoing paragraphs.

34. Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

35. At all time relevant hereto, the IDOC and the ISCI have been "public entit[ies]" within the meaning of the ADA. 42 U.S.C. § 12131(1).

36. At all time relevant hereto, Plaintiff, as an individual who is deaf, has been a "qualified individual with a disability." 42 U.S.C. § 12131(2).

37. At all times relevant to this action, the ADA was in full force and effect in the United States and Plaintiff has had a right not to be subjected to discrimination on the basis of his

disability. 42 U.S.C. § 12132.

38. An aid, benefit, or service that the ISCI provides is the opportunity for inmates to communicate with persons outside the prison telephonically.

39. The U.S. Department of Justice's (DOJ) regulations implementing Title II of the ADA state that a public entity, in providing any aid, benefit, or service, may not on the basis of disability "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others . . . ." 28 C.F.R. § 35.130(b)(1)(ii).

40. Providing Plaintiff a TTY in lieu of a telephone does not provide him the opportunity to communicate with persons outside the prison telephonically that is equal to that afforded others since – unlike a telephone for a hearing inmate – a TTY does not allow him to communicate in his primary language with virtually all his family members, friends and other persons in his community.

41. The DOJ's regulations implementing Title II of the ADA state that a public entity, in providing any aid, benefit, or service, may not on the basis of disability "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others . . . ." 28 C.F.R. § 35.130(b)(1)(iii).

42. Providing Plaintiff a TTY in lieu of a telephone is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others since a TTY – unlike a telephone for a hearing inmate – does not allow him to communicate in his primary language with virtually all his family members, friends and other persons in his community.

43. The DOJ's regulations implementing Title II of the ADA prohibit a public entity from providing "different or separate aids, benefits or services to individuals with disabilities unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others." 28 C.F.R. § 35.130(b)(1)(iv).

44. Plaintiff was provided a different or separate aid, benefit or service when he had to use the TTY from a telephone in the prison office. This resulted not because it was necessary to provide him with an aid, benefit, or service that was as effective as that provided to others but because the TTY would not work on the regular inmate telephone system.

45. A service, program, or activity of the ISCI is providing inmates the opportunity to communicate with persons outside the prison telephonically.

46. The DOJ's regulations implementing Title II of the ADA require that a public entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160(b)(1).

47. A videophone is an auxiliary aid. 28 C.F.R. § 35.104.

48. Providing Plaintiff the use of a videophone is necessary in order to ensure him an equal opportunity to participate in and enjoy the benefits of the opportunity afforded hearing inmates to communicate with persons outside the prison telephonically for without the use of a videophone he cannot communicate in his primary language with virtually all his family members, friends and other persons in his community as can hearing inmates via a telephone.

49. For the foregoing reasons, the failure to provide Plaintiff a videophone or something functionally equivalent has subjected Plaintiff to discrimination by reason of his disability in violation of the ADA.

50. As a result of the violation of his rights under the ADA, Plaintiff has suffered and continues to suffer from unequal treatment and emotional pain and suffering due to his increasing isolation stemming from the inability to effectively communicate with others outside of the prison.

51. Defendants' negligent discharge of their official duties were the proximate cause of the aforementioned violation of Plaintiff's rights under the ADA since they knew or should have known that the opportunity provided deaf inmates to communicate with persons outside the prison was not equal to that opportunity provided to hearing inmates.

### Claim 2: Rehabilitation Act

52. Plaintiff realleges and incorporates by reference all the foregoing paragraphs.

53. The Rehabilitation Act provides that no otherwise qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

54. On information and belief, at all relevant times herein, the IDOC and the ISCI have been recipients of federal financial assistance.

55. At all times relevant hereto, Plaintiff, as an individual who is deaf, has been a qualified individual with a disability.  29 U.S.C. § 705(20).

56. At all times relevant to this action, the Rehabilitation Act was in full force and effect in the United States and Plaintiff has had a right not to be subjected to discrimination on the basis of his disability by Defendants. 29 U.S.C. § 794(a).

57. The ISCI and its various activities are "program[s] or activit[ies]" receiving federal financial assistance required to comply with the Rehabilitation Act. 29 U.S.C. § 794(b).

58. One of the ISCI's specific programs or activities is providing the opportunity for inmates to communicate with persons outside the prison telephonically.

59. The DOJ's regulations implementing the Rehabilitation Act clarify that that it is discriminatory to deny a qualified individual with a disability "an equal opportunity to achieve the same benefits that others achieve in the program or activity . . . ." 28 C.F.R. § 42.503(b)(ii).

60. Providing Plaintiff a TTY in lieu of a telephone does not afford him an equal opportunity to obtain the same benefit as that provided others since a TTY – unlike a telephone for a hearing inmate – does not allow him to communicate in his primary language with virtually all his family members, friends and other persons in his community.

61. The DOJ's regulations implementing the Rehabilitation Act require that a recipient of federal financial assistance "shall provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity . . . ." 28 C.F.R. § 42.503(f).

62. Auxiliary aids may include telephonic devices. 28 C.F.R. § 42.503(f).

63. The failure of the ISCI to provide an appropriate auxiliary aid, viz., a videophone, for Plaintiff's use discriminatorily impairs his participation in program of telephonic communication with persons outside the prison by making such participation increasingly ineffectual.

64. For the foregoing reasons, the failure to provide Plaintiff a videophone or something functionally equivalent has subjected Plaintiff to discrimination by reason of his disability in violation of the Rehabilitation Act.

65. As a result of the violation of Plaintiff's rights under the Rehabilitation Act, Plaintiff has suffered and continues to suffer from unequal treatment and emotional pain and suffering due to

his increasing isolation stemming from the inability to effectively communicate with others outside of the prison.

66.     Defendants' negligent discharge of their official duties were the proximate cause of the aforementioned violation of Plaintiff's rights under the Rehabilitation Act since they knew or should have known that the opportunity provided deaf inmates to communicate with persons outside the prison was not equal to that opportunity provided to hearing inmates.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court:

1.      Adjudge and decree that a continuation of Defendants' actions and inactions complained of herein will violate Plaintiff's rights under the ADA and the Rehabilitation Act.

2.      Order Defendants to comply with the requirements of the ADA and the Rehabilitation Act by ensuring that Plaintiff is provided the use of a videophone or some other comparable device under the same terms and conditions that telephones are provided to hearing inmates.

3.      Award reasonable attorney fees, litigation expenses and costs pursuant to 42 U.S.C. § 12205 and 29 U.S.C. § 794a.

4.      Retain jurisdiction of this matter until Defendants demonstrates that they have fully complied with the orders of this Court and that there is a reasonable assurance that they will continue to comply in the future absent continuing jurisdiction.

5.      Grant Plaintiff such other relief as the Court deems just.

RESPECTFULLY SUBMITTED this 23rd day of January, 2012.

                              DISABILITY RIGHTS IDAHO

                              _____/s/_____
                              BY:  J. Carl Mickelsen
                               Attorneys for Plaintiff