UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RANDOLPH SMITH,<br><br>    Plaintiff,<br>  v.<br><br>BRENT REINKE and JOHANNA SMITH,<br><br>    Defendants. | Case No. 1:12-cv-00030-BLW<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

The Court has before it defendants' motion to empanel an advisory jury. (Dkt. 30). For the reasons explained below, the Court will deny the motion.

## BACKGROUND

Plaintiff Randolph Smith is a deaf prisoner at the Idaho State Correctional Institute. He has sued officials at Idaho's Department of Corrections under the American Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973. Smith alleges that defendants violated his rights under these acts by denying his request to use a videophone to communicate with friends and relatives.

The prison provides deaf inmates with a text telephone phone system (a TTY), but Smith says the TTY does not enable him to communicate with deaf persons outside the prison in a manner that is functionally equivalent to that provided to hearing inmates. More specifically, he says the TTY does not allow him to communicate in his primary language. He also says the TTY is becoming obsolete, meaning that he can talk to fewer and fewer people as time goes on. *See Compl.*, Dkt. 1, ¶ 1.

The parties agree that Smith is not entitled to a jury trial, as he only seeks equitable relief. Defendants, however, move the Court to empanel an advisory jury under Federal Rule of Civil Procedure 39(c).

## ANALYSIS

Rule 39(c)(1) allows district courts to empanel advisory jury in cases where there is no right to a jury trial. *See* Fed. R. Civ. P. 39(c)(1). Courts typically empanel advisory juries for two reasons. *See generally In re Currency Conversion Fee Antitrust Litig.*, 2012 WL 4361443, at *1 (S.D.N.Y. Sept. 11, 2012). First, to promote judicial economy, courts will empanel advisory juries if at least one of the claims to be tried has facts common to another claim that will be tried to a jury as a matter of right. *Id.* Second, courts will empanel an advisory jury when "special factors" suggest that members of the local community would help guide the Court in making its findings and conclusions. *Id.* (citation omitted).

1. **Judicial Economy**

Here, empanelling an advisory jury would not promote judicial economy because Smith does not have a jury trial right on any of his claims. So the normal course would

be a bench trial. Jury trials are slower and more expensive than bench trials. *Accord, e.g., Fort Henry Mall Owner, LLC v. U.S. Bank N.A.*, 2012 WL 523657, at *5 (E.D. Tenn. Feb. 15, 2012) ("A trial using an advisory jury has all the disadvantages of a normal jury trial . . . ."). Among other things: jurors have to be selected and paid; the parties and the Court must spend time and resources on voir dire and jury instructions; and the Court might have to make mid-trial evidentiary rulings that would be unnecessary in a bench trial. Further, regardless of what an advisory jury recommends, the Court must ultimately make its own factual findings and draw its own conclusions. Thus, concerns of judicial economy weigh in favor of a bench trial.

2.  **Special Factors**

Defendants argue that an advisory jury would be particularly helpful in this case because the Court will have to determine whether a TTY is a "reasonable accommodation" under the ADA. Defendants say that members of the local community are uniquely competent in making "reasonableness" determinations.

Smith agrees that "reasonableness" will be a factor in this litigation, but quibbles about the term "reasonable *accommodation*." He says the inquiry should be more precisely framed as whether the prison's policy – denying his request for a videophone and instead providing a TTY – is reasonably related to a legitimate penological interest. Regardless, both sides agree that "reasonableness" is an issue and that the Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78, 87 (1994) will govern the reasonableness analysis. *See Gates v. Rowland*, 39 F.3d 1439, 1447 (9th Cir.1994) (correct standard for reviewing claimed violations of prisoners' statutory rights under the

Rehabilitation Act is the standard articulated in *Turner*). In *Turner*, the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is nonetheless valid if it is reasonably related to legitimate penological interests." *Id*. at 89. The *Turner* Court identified four factors relevant to determining the reasonableness of a policy or practice: (1) whether there is a valid, rational connection between the practice and a legitimate governmental interest; (2) whether "alternative means" exist for inmates to exercise the constitutional right at stake; (3) the impact of accommodation on prison security, administrative efficiency, prison staff, and the inmate population as a whole; and (4) whether the prison's policy represents an "exaggerated response" to prison concerns. *Id*. at 87. The Ninth Circuit has clarified that under this analytical framework, the plaintiff-inmate bears the initial burden of showing that the prison's policy is unreasonable. *See Armstrong v. Davis*, 215 F.3d 1332, at *2 (9th Cir. 2000) (unpublished table decision) ("*Gates* clearly requires that the initial burden of proof be placed on the prisoners to demonstrate why the CDC's proposed plans were unreasonable.").

The Court is not convinced that a jury is uniquely competent to apply the *Turner* reasonableness factors. This reasonableness determination is more complex than the reasonable-person analysis that comes into play in other contexts. In a negligence setting, for example, the reasonable-person analysis is blunter. It asks jurors to determine things like whether the defendants knew or should have known that their dog had vicious and dangerous propensities. *See generally* 10A Charles Alan Wright et. al., *Federal Practice &* Procedure § 2729 n.3 (3d ed. 1998). That sort of question is more common in

human experience than figuring out whether there is a valid, rational connection between a prison policy and a legitimate governmental interest.  Juries could certainly do it, but the Court does not see the same "unique competence" here that exists in other contexts. The Court will therefore deny defendants' motion to empanel an advisory jury.

## ORDER

1. Plaintiff's unopposed Motion to Strike Defendant's Demand for a Jury Trial (Dkt. 25) is **GRANTED.**

2. Defendant's Motion to Empanel an Advisory Jury (Dkt. 30) is **DENIED.**

DATED: May 27, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court